# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | Chapter 11 |
| HITZ RESTURANT GROUP, LLC,   ) | |
| ) | Case No. 20-B-05012 |
| Debtor   ) | |
| ) | Hon. Donald R. Cassling |

### DEBTOR'S COMBINED RESPONSE TO MOTION OF KASS MANAGEMENT SERVICES, INC. AND THE SOUTH LOOP SHOPS, LLC FOR RELIEF FROM THE AUTOMATIC STAY AND TO COMPEL PAYMENT OF RENT

NOW COMES Debtor Hitz Restaurant Group LLC by and through its attorneys The Golding Law Offices PC and responds in objection to the Motion to Compel Payment of Rent and to the Second Motion for Relief from Stay filed by Kass Management Services, Inc. and South Loop Shops LLC as follows:

The Debtor's post-petition obligation to pay rent is excused for three reasons: the force majeure clause of the Lease triggered by the COVID-19 crisis; the diminution in value of the leasehold arising from the COVID-19 crisis; and the Debtor's right to setoff against the post-petition rent obligation arising from the Movants' continuing failure to address significant problems with the leased premises.

## I.   FORCE MAJEURE

Section 29.5 of the Lease is the Force Majeure Clause. It provides:

> Landlord and Tenant shall each be excused from performing its obligations or undertakings provided in this Lease, in the event, but only so long as the performance of any of its obligations are prevented or delayed, retarded or hindered by act of God, fire, earthquake, flood, explosion, actions of the elements, way, invasion, insurrection, riot, mob violence, sabotage, inability to procure or general shortage of labor, equipment, facilities, materials or supplies in the open market, failure of transportation, strikes, lockouts, action of labor unions, condemnation, requisition, laws, governmental

1

> action or inaction, orders of government or civil or military or naval authorities, or any other cause, whether similar or dissimilar to the foregoing, not within the reasonable control of the party or its agents, contractors or employees (each, individually and collectively, an event of "Force Maieure[11],[sic]"). Lack of money shall not be grounds for Force Majeure.

In response to the current COVID-19 crisis, The Governor of the State of Illinois has issued a Gubernatorial Disaster Proclamation and a series of executive orders (attached hereto as Group Exhibit 1) which impair economic activity in the state, including Executive Order 2020-7 which provides in relevant part:

> Beginning March 16, 2020 at 9 p.m. through March 30, 2020, all businesses in the State of Illinois that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—must suspend service for and may not permit on-premises consumption. Such businesses are permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as currently permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. In addition, customers may enter the premises to purchase food or beverages for carry-out However, establishments offering food or beverages for carry-out, including food trucks, must ensure that they have an environment where patrons maintain adequate social distancing.

Restaurant patronage is further impaired by Executive Order 2020-10 ordering citizens to remain in their homes to the extent possible. See https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx.

On April 30, 2020, supplemental executive orders were entered extending restrictions at least until May 29, 2020. See https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-32.aspx and https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-33.aspx. With regard to the Debtor's business as a sit-down restaurant and bar, Executive Order 32 provides:

> **Restaurants for consumption off-premises.** Restaurants and other facilities that prepare and serve food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive-through, curbside pick-up, and carry-out.

These restrictions have been catastrophic for the restaurant industry. The Governor recently announced a five-phase plan for reopening the state, but the earliest proposed date, June 26, 2020, is by no means certain and increasingly unlikely. See Exhibit 2 attached hereto and made part hereof: https://www.chicagotribune.com/coronavirus/ct-food-restaurant-pritzker-react-coronavirus-0507-20200507-c55j2o37xzfrve6gd4ri2pqbsm-story.html. According to the Illinois Restaurant Association, restaurants that are offering carry-out and delivery are seeing 70%-80% declines in sales, on top of the burdens of keeping their employees and customers safe during this catastrophe. The Debtor is unable to operate under these circumstances, with a decimated customer base and most of its leasehold unusable because it is prevented by executive order from operating its dining room and bar, comprising most of the space leased by the Debtor.

With regard to the Force Majeure Clause, the Debtor's ability to meet its obligations or enjoy its rights under the lease are impaired by "governmental action or inaction" and "orders of government", implicates "inability to procure or general shortage of labor, equipment, facilities, materials or supplies in the open market" (collapsing food supply chains and workers afraid to return to dangerous conditions) and hopefully will not rise to "insurrection, riot, mob violence" as seems to be percolating around the country.

> Ordinarily when performance of a contract would be illegal because of a statute, regulation, or other official action that has occurred since the contract was signed, the promisor is discharged without liability, pursuant to the common law doctrine of impossibility (today often called "impracticability"). *407 East 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 244 N.E.2d 37, 296 N.Y.S.2d 338 (1968); Restatement of Contracts (Second), § 264 (1981). If, however, the parties include a force majeure clause in the contract, the clause supersedes the doctrine. *Northern Indiana*

> *Public Service Co. v. Carbon County Coal Corp.*, 799 F.2d 265, 276 (7th Cir. 1986); *Wiggins v. Warrior River Coal Co.*, 696 F.2d 1356, 1359 (11th Cir. 1983). For, like most contract doctrines, the doctrine of impossibility is an "off-the-rack" provision that governs only if the parties have not drafted a specific assignment of the risk otherwise assigned by the provision.

*Commonwealth Edison Co. v. Allied-General Nuclear Services*, 731 F. Supp. 850, 855 (N.D. Ill. 1990).

The "orders of government" contemplated under the Force Majeure Clause do not require that the order specifically require the breach of the agreement. "By this we do not mean to say that in order to constitute a *force majeure* event, an ICC order or other utility regulation must specifically direct a party to breach an obligation. What is required is that the order clearly direct or prohibit an act which proximately causes nonperformance or breach of a contract." *Northern Illinois Gas Co. v. Energy Cooperative, Inc.*, 122 Ill. App. 3d 940, 951, 461 N.E.2d 1049, 1058 (3rd Dist. 1984).  See also *Glen Hollow Pshp. ex rel. Big Hollow Land Trust v. Wal-Mart Stores*, Nos. 97-1433 & 97-1510, 1998 U.S. App. LEXIS 3214, at *9 (7th Cir. Feb. 26, 1998).

The Force Majeure Clause operates to relieve the Debtor of its obligation to pay post-petition rent during the pendency of this crisis, in particular so long as the emergency orders restricting the operation of the Debtor's business remain in force.  This applies to the Debtor's obligation to pay rent pursuant to 11 U.S.C. §365(d)(3).  Movants also cite to the Debtor's alleged obligation to pay rent under 11 U.S.C. §365(d)(3) as cause for relief under 11 U.S.C. §362(d).  Paragraphs 17-29 (out of 29) of the Movants' second Motion for Relief From the Automatic Stay comprise their argument that the Debtor's alleged failure to pay post-petition rent is cause for relief from the Automatic Stay.  Paragraphs 1-16 of that Motion merely recount the pre-petition history and certain alleged lease terms but do not set forth any argument for relief.  Therefore the Debtor's excusal of performance pursuant to the Force Majeure Clause

4

supersedes all other alleged obligations of the Debtor under the Lease as possible causes for relief from the Automatic Stay.

## II. VALUE OF LEASEHOLD

As discussed above, the COVID-19 crisis and the ensuing emergency orders severely impair the value of the leasehold. Approximately three quarters of the leasehold areas are dedicated to on-premises service of food and liquor, comprising restaurant seating, bar, and restrooms. The remaining quarter is the kitchen, which could still be used to prepare food for the miniscule carry-out/delivery market. See Exhibit 3, Leasehold Floorplan attached hereto and made part hereof.

> Until assumption or rejection and after rejection with possession in the debtor, the estate is liable only for the reasonable value of the use and occupancy of the premises. *Philadelphia Co. v. Dipple*, 312 U.S. 168 (1941). Although the use and occupancy payment is an administrative expense, 11 U.S.C. § 503(b)(1)(A), and not "rent," there is a rebuttable presumption that the contractuallay [sic] reserved rent is reasonable and owing for the period of actual or constructive occupation. *In re Schnabel*, 612 F.2d 3154, 318 (7th Cir. 1980); *S & W Holding Co. v. Kuriansky*, 317 F.2d 666, 667 (2d Cir. 1980); *S & W Holding Co. v. Kuriansky*, 317 F.2d 666, 667 (2d Cir. 1963); *In re By The Sea Foods, Inc.*, 30 Bankr. 262, 264 (Bankr. M.D. Fla. 1983). The Creditors' Committee can only overcome the presumption by "convincing evidence to the contrary." *In re Fred Sanders, Co.*, 22 Bankr. 902, 907 (Bankr. E.D. Mich. 1982).

*In re UNR Industries*, No. 82 B 9841 - 82 B 9851, 1984 U.S. Dist. LEXIS 16233, at *81 (N.D. Ill. May 31, 1984). The emergency restrictions in effect, which would impair any retail operation which could operate out of the premises at issue, overcome the presumption that the reasonable value of the premises during the post-petition period is the rent set forth in the Lease. The Debtor is prohibited from using three quarters of its leased space. Therefore the Movants cannot be entitled to post-petition rent at the contractual rate, the Debtor should not be compelled to pay such

a rate, and its refusal to pay such a rate should not be found to be cause for relief from the Automatic Stay.

### III. NECESSARY REPAIRS

In Paragraph 7 of the second Motion for Relief from Stay, Movants allege "Section 1.4 of the Lease provides that upon taking possession of the Premises, Debtor accepts it in an AS-IS, WHERE-IS condition." However, this omits a significant element of that clause, which states in full:

Tenant shall be granted possession of the Demised Premises upon the Date of Execution of this Lease and providing all insurance certificates required in section IV of this lease. Tenant accepts the Demised Premises in an AS-IS, WHERE-IS condition subject to HVAC will be operational, electric connection to circuit breaker panel, plus hot water tank, Cold water and waste are functioning to present fixtures. Inspection to be made prior to start of any construction.

Paragraph 10 of that Motion alleges "Section 5.1 of the Lease provides that it is Debtor's obligation to maintain Premises and to maintain, replace and repair all equipment, including heating, ventilating, and air conditioning facilities." Paragraph 11 of that Motion alleges "Section 12.3 of the Lease provides that Debtor is to install and maintain all fixtures, furnishings, and equipment for the operation of its business. However, these allegations are misleading.

Section 3.1 of the Lease, "Landlord's Work" provides:

> Landlord agrees that the following shall be operational: HAVAC, hot water tank, Cold [sic] water and waste are lines to present fixtures and electric service shall be connected to circuit breaker panel. Verification of operation shall be made prior to start of any construction.

It took two months for the Movants to get the hot water working in the premises. The HVAC still does not function properly to this day. Contrary to Movants' representation to this

6

Court at the presentment of its Motion to Compel, Debtor's managing member repeatedly informed both the Landlord and the Building Manager of these issues, as well as the recurring noise from the tenant gym on the floor above which has been driving customers away. Complaints about the HVAC have appeared in the Debtor's Yelp reviews. See the Declaration of Robert Hitz, Sr. attached hereto and made a part hereof, along with the exhibits attached thereto. The Movants repeatedly promised to make repairs, but promised repairmen never appeared and neither issue has been remediated. The Debtor has reasonably relied on the promises of the Landlord and the Building Manager to remediate these issues, but the Debtor's continuing complaints have prompted the Landlord to threaten to block Mr. Hitz's phone number. The Movants' failure to correct these issues impair the reasonable value of the premises and obviate the Debtor's obligation to pay the alleged contractual post-petition rent. The Debtor therefore should not be compelled to pay such rent, and its refusal to pay is not cause for relief from the Automatic Stay.

IV.     STAY RELIEF

Although the entire argument laid out by the Movants in the Motion for Relief from Stay is premised in the Debtor's alleged obligation to pay post-petition rent, they mention in passing other elements of 11 U.S.C. §362(d), including the alleged lack of adequate protection. However, the same factors which obviate the Debtor's post-petition rent obligations negate any right to adequate protection.

> Like a secured creditor, a personal property lessor may demand adequate protection under § 363(e). The *Timbers* rationale suggests that if leased property is declining in value during a period in which the automatic stay prevents repossession of the property, the decline in value should be offset by lease payments or other forms of adequate protection at least up to the amount of rent called for by the lease. However, it would not appear appropriate to award a lessor adequate protection in an amount greater than the prescribed lease payments. *See In re Palace Quality Services Industries, Inc.*, 283 B.R. 868, 882 n.13 (E.D. Mich. 2002) ("[A]

>lessor cannot compel the trustee under Section 363 to pay more than the benefit of the bargain in the event that the lessor miscalculated in setting the lease payment at less than the rate of depreciation associated with the leased personalty.").

*In re UAL Corp.*, No. 02 B 48191, 2005 Bankr. LEXIS 2190, at *14-15 (Bankr. N.D. Ill. Nov. 15, 2005). Since the Debtor is not obligated to pay any post-petition rent, the Movants are not entitled to adequate protection payments in excess of the rent payable.

Movants assert that the leasehold is not necessary for an effective reorganization of the Debtor, however the leasehold contains the Debtor's entire operation. Although the present crisis impairs the Debtor's ability to reorganize immediately, pursuant to 11 U.S.C. §1121(e)(2) the Debtor has until December 21, 2020 to file its plan and disclosure statement. Even the Debtor's exclusive period to file a plan does not expire until August 24, 2020.

"Necessary to an effective reorganization" under section 11 U.S.C. §362(d)(2) requires that the property in question must be essential for reorganization in that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988). In a Chapter 11, this requires a showing that reorganization is impossible without the property and an inquiry by the court as to whether the Debtor can propose a feasible plan within a reasonable timeframe.

In the early stages of a bankruptcy case (such as in the instant matter), a debtor may be given a greater benefit of the doubt as to the success of a proposed feasible plan. *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) The filing of a bankruptcy case gives debtor a "breathing spell," which allows a debtor time to attempt a reorganization plan. *In re Bovino*, 496 B.R. 492, 507 (Bankr. N.D. Ill. 2013)

> A "sliding scale" is used to determine the extent to which the debtor must prove the possibility of an effective reorganization. *In re Ashgrove Apts. of DeKalb County, Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990). The stage of the proceeding determines the meaning of "reasonable possibility within a reasonable time" and the extent of the burden of proof on the debtor. *Id.* At a minimum the debtor must show that (1) it is proceeding to propose a plan of reorganization, (2) the proposed or contemplated plan has a realistic chance of being confirmed and (3) the proposed or contemplated plan is not patently unconfirmable. *Cadwell's Corners*, 174 B.R. at 759 (citing *In re Ashgrove*, 121 B.R. at 756).

*In re Robinson*, Chapter 11, Case No. 00 B 02122, 2000 Bankr. LEXIS 1433, at *19-20 (Bankr. N.D. Ill. Dec. 7, 2000)  It is not necessary for the Debtor to file an actual plan prior to the hearing on the motion to modify stay in order to meet this burden. *Edgewater Walk Apts. v. Mony Life Ins. Co. of America*, 162 B.R. 490, 494 n.5. (N.D. Ill. 1993).

As things stand, it is reasonable for the Debtor to wait for some stability in the COVID-19 regulations from the state and the city.  The regulations under which the Debtor would be operating following the confirmation of a plan in late 2020 or early 2021 are unknown.  Even the regulations that the Debtor would be operating under at the time of a final hearing on these Motions is fluid.  As things stand, the Debtor is contemplating a plan which will comply with the requirements of 11 U.S.C. §1129 funded by an infusion of capital.  The Debtor's managing member is in ongoing discussions with a potential investor who has been successful in the Chicago restaurant market.  Given the Debtor's limited assets at the commencement of this case and the loss of value of many of those assets if the Debtor is evicted from the premises, there should not be an issue with the liquidation analysis.  The Debtor anticipates litigating the Movants' claim, but remains hopeful that an agreement can be reached regarding a modified lease going forward, given the expected continuing restrictions on operations that any prospective tenant would face until a vaccine becomes widely available.  The Debtor is

Document      Page 10 of 10

considering its options for how to change its operations in order to be most profitable under reduced occupancy going forward.

Movants allege that "If Creditor is not legally permitted to proceed with the Forcible Action, to protect its interest in the Premises, it will suffer irreparable injury, loss, and damage." However, under the present COVID-19 restrictions, Movants cannot actually proceed with its Forcible Action. General Administrative Order 2020-01 of the Circuit Court of Cook County (Amended May 1, 2020) has continued non-emergency civil matters and that is likely to be extended. See http://www.cookcountycourt.org/Portals/0/5_1_20%20GAO.pdf?ver=2020-05-01-115729-743. Movants' urgency under these circumstances is baffling, and it is a mystery what it expect to do so immediately with the premises while the restaurant industry and storefront retail in general is collapsing amidst the crisis and the ensuing emergency orders.

Lastly, Movants have not met their burden of establishing the Debtor's lack of equity in the property.

WHEREFORE, Debtor Hitz Restaurant Group LLC prays for entry of an order denying the Motion to Compel Payment of Rent and the Motion for Relief from Stay of Kass Management Services, Inc. and South Loop Shops LLC, and for such further relief as this court deems just.

                                      Respectfully submitted,

                                      By: /s/ Jonathan D. Golding
                                      Proposed Attorney for the Debtor

Jonathan D. Golding, Esq. (ARDC# 6299876)
THE GOLDING LAW OFFICES, PC
500 N. Dearborn Street, 2nd Floor
Chicago, IL 60654
Tel: (312) 832-7892
Fax: (312) 755-5720
Email: jgolding@goldinglaw.net